IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **DEBBIE COMPTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-15- 731-F |
| | ) | |
| 1. **HOBBY LOBBY STORES, INC.,** | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Debbie Compton, and for her Complaint in the above-entitled action, alleges and states as follows:

### PARTIES

1. Plaintiff, Debbie Compton, is an adult female resident of Oklahoma County, Oklahoma.

2. Defendant Hobby Lobby Stores, Inc., is an entity doing business in Oklahoma County, Oklahoma.

### JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of (a) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended; and (b) retaliation for her opposition to unlawful discrimination and her participation in the investigation of unlawful discrimination in violation of 42 U.S.C § 2000e *et. seq.*

1

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.

5. Defendant is doing business in Oklahoma County. Defendant may be served in Oklahoma County. Oklahoma County is located in the Western District of Oklahoma. And, many of the actions complained of herein occurred in Oklahoma County, including Plaintiff's termination. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 10, 2014. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated April 21, 2015 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Debbie Compton was hired with Defendant as a store co-manager on or about March 8, 1999. Within a few months, on or about June 22, 1999, Compton was promoted to Management Recruiter. In or around 2002, Compton was promoted to Training Manager. And, on or about August 13, 2007, Compton was promoted to Assistant Director of Management Recruiting.

8. Compton's job performance during her employment was at least satisfactory, if not excellent.

9. As Assistant Director of Management Recruiting, Compton reported to Director of Management Recruiting Bill Owens.

10. While reporting to Owens, Compton was treated less favorably than male employees. For instance, Owens routinely invited male employees to lunch, but did not invite Compton. Owens micro-managed Compton, but did not do so with male employees. And, if Compton traveled for work, she was required to report to her office before her flight. However, male employees were not required to check-in at the office before their flights.

11. Moreover, Owens allowed male employees to leave work without claiming PTO time, while Owens chastised Compton for leaving fifteen (15) minutes early. Owens also frequently called Compton to return to work early from approved leave. On one occasion, Compton was out-of-town attending a family member's funeral. Owens contacted Compton stating that he needed her back in the office immediately. Upon her return, Owens stated that they needed to determine whether they wanted to use a kiosk computer for employment applications in the stores and that a sample kiosk was available that day. However, when Compton spoke with Safety Analyst Amber Summers about the task, Summers stated that she specifically told Owens the demonstration did not have to occur that day and Compton did not need to return early.

12. The organizational chart indicated that Compton had 17 recruiters and 10 office staff reporting directly to her. However, she was only permitted to be involved in discipline and performance discussions involving female employees. If she mentioned to Owens that

one of her male direct reports should be disciplined, Owens said he would take care of it.

13. For instance, Compton reported to Owens that a male recruiter did not appear to be hiring any women for management positions, although there were qualified women in the applicant pool. Owens said he would talk to the recruiter, but the male recruiter's hiring practices did not change.

14. Compton also observed that male recruiters were given preferential treatment over female recruiters. For instance, female recruiters were required to send candidates for drug tests within 24 hours of a conditional offer of employment, while male recruiters were not always held to this standard.

15. Owens also engaged in unlawful hiring practices, including but not limited to telling recruiters that it was not a "good idea" to hire Muslims at Hobby Lobby in management positions.

16. Moreover, for hiring, Defendant uses a process called "6 Step" developed by Owens. Candidates' employment histories are rated on a scale of 1-10 (10 being the best) based on the type of work the candidate had performed. Only applicants scoring a "6" or higher were given a phone interview. The "6 Step" process resulted in very few women being hired for store manager positions because grocery store management experience (which is a predominantly male field) is rated higher than department store management experience (which statistically has more women in management).

17. Compton told Owens several times that the "6 Step" process had a disparate

impact on the hiring of women. In fact, the ratio of female hires to males was as low as 22%, although the female qualified applicant pool was much higher and the total applicant pool had a greater female population. Owens denied that "6 Step" resulted in hiring less female applicants and did not change the process.

18.     In or around December 2008, Compton traveled to Illinois to interview co-manager candidates with Recruiter Dave Kienker. On her way to the interviews, Owens called Compton to check-in and make sure she was on her way to the interviews (Owens did not contact his male recruiters to "check-in"). Owen asked who was scheduled for interview. One of the candidates was a woman whom Owens and Kienker previously interviewed. Owens told Compton not to interview the woman because she was not qualified, had human resources experience and wanted to cause Defendant trouble by pushing a "feminist agenda."

19.     However, because the woman was waiting when Compton arrived at the store, she conducted the interview. Compton also reviewed her qualifications and determined the woman should be recommended for hire because she interviewed well and had prior retail management experience. And, she had already passed through the "6 Step" process to be selected for interview.

20.     Compton called Owens and notified him of the same. Owens again stated that the candidate wanted to push a female agenda and he did not like her. Compton disagreed and asked what rejection reason should be listed, as the candidate was qualified. Owens told Compton this was her problem and hung up.

21. Upon her return from the trip, Owens met with Compton and Kienker (who attended by phone). Compton again stated that the female candidate was qualified and she did not feel she was pushing a feminist agenda. Owens said he did not care and told Kienker that Owens did not recommend her hiring, that he would not personally hire her, and that he would question Kienker's abilities as a recruiter if she was hired. Compton again asked what rejection reason should be listed, because they could not truthfully say that the candidate was not qualified for the position or that she did not interview well. Ultimately, the reason for denial stated that Owens did not want to hire the candidate.

22. A male was hired for this co-manager position.

23. On or about April 28, 2009, Owens presented Compton with a written warning for allegedly telling another employee to pursue a different position without consulting with Owens. Owens further alleged that Compton suggested another employee move his office to Defendant's corporate headquarters when Owens previously stated he wanted the employee to work in the field.

24. Compton explained to Owens and Human Resources representative Heather Brandt that she had not made these statements. Upon information and belief, after Brandt and Owens verified Compton's response by speaking to third parties, Brandt told Owens that Compton's actions did not warrant a written warning. Thus, Owens changed the document to a verbal warning, even though Compton's statements were corroborated.

25. In or around June 2009, Compton was contacted by Staff Attorney Allison

Phillips regarding a gender discrimination allegation raised by the female candidate whom Owens refused to hire in or around December 2008. Compton told Phillips that Owens did not want to hire the woman because she had human resources experience and he thought the candidate was a feminist pushing her agenda. Compton further stated the candidate was qualified for the position. Compton was interviewed more than once by Phillips regarding this incident. However, she was not notified of the results of the investigation.

26. In or around August 2009, Owens accused Compton of using company funds to visit her family and reported his allegations to Brandt in HR. Compton provided documentation that she was interviewing candidates on trips Owens deemed "personal." In fact, Compton did not have family living in the locations she was accused of visiting. Ultimately, Compton was not disciplined. However, Owens was aware that male recruiters used company funds for personal trips and took their wives on trips, but the male recruiters were not disciplined.

27. Thereafter, Compton told Vice President of Operations Randy Betts (Owens' supervisor) about Owens' negative treatment. Compton, Owens, Betts and Exec. VP of Operations Ken Haywood met to discuss Compton's complaints, including but not limited to excluding Compton from recruiter meetings, not sharing financial information needed to complete her job, and falsely accusing Compton of disciplinary infractions. Despite reporting her concerns to Betts and Haywood, Owens' treatment of Compton did not improve.

28. In or around December 2010, Compton was contacted by Phillips regarding an

EEOC Charge filed by one of Owen's subordinates. The complaining female employee was demoted by Owens, allegedly for not getting along with a male Regional Manager. Compton told Phillips that she believed Owens treated the woman more harshly than her male counterparts, and that Owens, at times, treated women less favorably than men. Compton further indicated that she was subjected to similar demeaning treatment from Owens.

29.   In or around April 2014, Compton reported to Owens that a male recruiter was falsifying hiring documentation by back-dating documents to show that all of Defendant's hiring procedures had been followed, when the recruiter had not followed the procedures. Owens told Compton that he would handle the issue. However, no discipline was issued to the male recruiter.

30.   On or about May 6, 2014, Compton was called into a meeting with Owens and IT representatives regarding a document access database that Compton had been working on for over a year. Compton led a committee of other staff in the creation of such database, which Owens had initially approved. During this meeting, Owens accused Compton of allowing her husband to access confidential business information when he consulted on the project. Compton denied this, as her husband had simply provided minimal assistance in explaining the database build process. Defendant's IT representatives agreed with Compton after she explained her husband's involvement. Regardless, Owens decided to have a male IT representative build the database, rather than use the program Compton and her staff had worked on for over a year.

31. On or about May 19, 2014, Owens gave Compton a final written warning and demoted her from her Assistant Director position. Compton was given the option of accepting a store co-manager position or a recruiter position. Owens stated the reason for such demotion was that Compton allegedly violated company policy by voicing her disagreement with Owens' decision to change the regional assignment of two (2) recruiters and Owens' decision to discontinue the access database project.

32. However, such reasons were false. Compton merely directed a recruiter to speak with Owens regarding region changes because Owens made the final determination on region assignments. And, it was <u>Owens</u>, not Compton, that told recruiters and office staff that Compton disagreed with discontinuing the access database project.

33. The proffered reasons for this discipline were merely pretext for unlawful discrimination and retaliation. In fact, male co-workers committed comparable or worse alleged policy infractions, including but not limited to falsifying records and other acts of dishonesty, but have not been demoted.

34. Owens told Compton she must decide that day which demoted position she would accept. Compton told Owens that was not enough time and immediately spoke with Betts about the issue. Betts told Compton that Owens did not want her to be his Assistant Director any longer and the reasons Owens cited for her demotion did not matter. Betts told Compton to take more time to make her decision. Ultimately, Owens told Compton she had until May 23, 2014 to make her decision.

35. However, on or about May 22, 2014, Owens terminated Compton. Owens stated the reason for her termination was allegedly that Compton did not get permission from Owens to email a third party survey about Compton's job performance to her co-workers. Such reason was merely pretext for discrimination based on Compton's gender and retaliation for her opposition to Owens' unlawful hiring practices and participation in the investigation of such practices. And, male co-workers have not been disciplined for comparable offenses.

36. Moreover, at her termination, Owens treated Compton less favorably than any other male employee whom Owens had terminated. Owens told Compton that she could not gather her personal items, although men had been permitted to pack their own items at termination. Owens insisted on reviewing a file of Compton's mother's personal medical documents before he allowed Compton to take the file with her. Owens would not even allow Compton to call her husband from a company phone, even though Compton told Owens she was to meet her husband in a few minutes and he would be worried when he could not get in touch with Compton. Compton was also escorted out of the building by security. No male employee terminated by Owens was treated in this manner.

37. As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - Gender Discrimination

For her first cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows.

38.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender discrimination and retaliation.

39.     Plaintiff is a member of a protected class, was qualified for her position, was disciplined, demoted and discharged, and her position was not eliminated following her discharge.

40.     As damages, Plaintiff has suffered lost earnings, past and future, mental and emotional distress and other available compensatory damages.

41.     Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT II - Title VII Retaliation

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

42.     The matters alleged above constitute a violation of Title VII of the Civil Rights Act of 1964 for retaliating against Plaintiff for opposing discriminatory employment practices within the workplace and/or participating in investigations of discriminatory hiring practices.

43.     Plaintiff is entitled to relief under Title VII because she engaged in protected acts, she suffered one or more adverse actions, and, as shown above, there is a causal link

between the protected act and the adverse action.

44. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

45. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, and punitive damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 7th DAY OF JULY, 2015.**

    s/Jana B. Leonard
    JANA B. LEONARD, OBA# 17844
    LAUREN W. JOHNSTON, OBA #31744
    LEONARD & ASSOCIATES, P.L.L.C.
    8265 S. WALKER
    OKLAHOMA CITY, OK 73139
    (405) 239-3800   (telephone)
    (405) 239-3801   (facsimile)
    leonardjb@leonardlaw.net
    johnstonlw@leonardlaw.net

    JURY TRIAL DEMANDED
    ATTORNEY LIEN CLAIMED